**STATE OF WEST VIRGINIA**

**FILED**

March 19, 2021
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**TITUS RICE,**
**Claimant Below, Petitioner**

**vs.)**    **No. 19-1175** (BOR Appeal No. 2054541)
(Claim No. 2018000170)

**ARCH COAL, INC.,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Titus Rice, by counsel William B. Gerwig III, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Arch Coal, Inc., by counsel Jane Ann Pancake, filed a timely response.

The issue on appeal is the amount of permanent partial disability in the claim. On December 21, 2017, the claims administrator granted a 5% permanent partial disability award. On August 29, 2019, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated December 19, 2019, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Rice injured his neck, low back, right ankle, and left shoulder on June 29, 2017, from a rock fall in the course of and resulting from his employment. The claims administrator ruled the claim compensable for a right fibula fracture, right ankle sprain, and neck sprain by Order dated July 11, 2017. Mr. Rice was eventually referred for an independent medical evaluation and a permanent partial disability rating.

1

Mr. Rice underwent an independent medical evaluation with Prasadarao Mukkamala, M.D., on December 13, 2017. Dr. Mukkamala diagnosed Mr. Rice with "cervical sprain, right shoulder sprain, lumbar sprain, and fracture of the right fibula." Dr. Mukkamala rated his permanent impairment according to West Virginia Code of State Rules § 85-20 and the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993). Regarding the permanency rating for the cervical and lumbar spine, Dr. Mukkamala found 9% whole person impairment for range of motion with respect to the neck and cervical spine. Dr. Mukkamala classified Mr. Rice under Category II-B from Table 75 for 4% whole person impairment and 5% whole person impairment for the loss of range of motion for a combined total of 9% whole person impairment. Because the 9% whole person impairment exceeded the maximum award permitted by Table § 85-20-E Category II for cervical spine impairment, Dr. Mukkamala adjusted his impairment rating from 9% to 8%. He then reported, "[o]ut of the 8%, I will apportion the impairment and allocate 4% to preexisting conditions and 4% to the compensable injury of June 29, 2017." Dr. Mukkamala diagnosed no range of motion model impairment to Mr. Rice's lumbar spine or right shoulder. However, Dr. Mukkamala did note that a lumbar spine CT scan dated June 29, 2017, showed degenerative disc disease. He diagnosed 1% impairment for Mr. Rice's right leg fibular fracture using AMA *Guides* Tables 42, 43, and 64. Combining Mr. Rice's 4% cervical spine impairment with the 1% right leg impairment, Dr. Mukkamala recommended a rating of 5% whole person impairment.

By Order dated December 21, 2017, the claims administrator granted Mr. Rice a 5% permanent partial disability award. Mr. Rice protested the claims administrator's grant of a 5% award. At the request of his attorney, Mr. Rice was evaluated by Bruce A. Guberman, M.D., who issued a report dated January 19, 2018. Dr. Guberman diagnosed Mr. Rice with chronic posttraumatic strain of the cervical spine superimposed on preexisting, but dormant, degenerative joint and disc disease; chronic posttraumatic strain of the lumbosacral spine; status post fracture of the distal right fibula and sprain/strain of the right ankle; and persistent range of motion abnormalities of the right ankle and right hindfoot. Dr. Guberman assessed 8% impairment for the cervical spine, but he did not find that Mr. Rice had any impairment of the lumbar spine. Dr. Guberman assessed 4% impairment of the whole person for range of motion abnormalities of the right leg. Accordingly, Dr. Guberman recommended an additional 7% permanent impairment.

Dr. Guberman did not apportion Mr. Rice's cervical impairment for preexisting degenerative changes and addressed Dr. Mukkamala's recommendation to apportion impairment by stating:

> "Available records and history do not indicate any prior symptoms related to the cervical spine. Although he did have evidence of preexisting degenerative changes, they were not symptomatic and not causing impairment. Furthermore, the presence of degenerative changes alone on imaging studies of the cervical spine would not warrant an impairment rating using either the Range of Motion Model or Table § 85-20-E. In addition, there was no rationale for arbitrarily allocating half of the impairment rating for these preexisting conditions. Dr. Mukkamala has not actually specified any specific

preexisting condition or any rationale for assigning 4% impairment of the whole person for a preexisting condition."

Dr. Guberman concluded that the manner of apportionment suggested by Dr. Mukkamala was inconsistent with methods of apportionment described in the AMA *Guides.*

Mr. Rice was examined by David Soulsby, M.D., on October 25, 2018, for an independent medical evaluation. Dr. Soulsby noted that Mr. Rice complained of pain in his neck radiating into the left upper extremity and right lateral leg pain. Dr. Soulsby reported that he had no records available for him to review. He stated that without reviewing the MRI of the cervical spine, he could not determine whether Mr. Rice might be at maximum medical improvement. With regard to the right ankle injury, Dr. Soulsby found that Mr. Rice was at maximum medical improvement. The assessment consisted of herniated nucleus pulpous of the cervical spine, fibular fracture, and partial peroneal nerve palsy of the right leg. In a supplemental report dated May 4, 2019, Dr. Soulsby reported that the cervical spine range of motion findings made by Dr. Guberman and Dr. Mukkamala were "very consistent with each other. However, the range of motion findings from my evaluation do not correlate at all with their findings." Dr. Soulsby added that "[i]n the cervical spine, the examination was not valid and no impairment can be calculated. With regard to the right leg, there is 3% impairment of the whole person. I do not find a preexisting or coexisting condition which has contributed to the loss of motion in the right ankle and I recommend a finding of 3% permanent partial impairment." Dr. Soulsby did not examine Mr. Rice's lumbar spine and made no permanent partial disability recommendation for lumbar spine impairment. In addressing Dr. Guberman's apportionment of his impairment finding, Dr. Soulsby stated that Dr. Guberman correctly applied Rule 20 and correctly adjusted the rating of cervical impairment. However, Dr. Soulsby further noted that Dr. Guberman erred by failing to apportion for preexisting disease because a finding of impairment is not based upon an individual's symptoms. Dr. Soulsby explained that there are objective measures which are used to calculate impairment.

On June 3, 2019, ChuanFang Jin, M.D., performed an independent medical evaluation upon Mr. Rice. Dr. Jin's impression was status-post mining accident with multiple soft-tissue injuries and right fibular mid portion fracture; right shoulder sprain, resolved; lumbar spine sprain/strain, resolved; right mid portion fibular shaft fracture, healed; and cervical sprain/strain, superimposed on preexisting degenerative cervical spine disease. Using the AMA *Guides*, Dr. Jin found no impairment of the lumbar spine from Table 75, and 2% whole person impairment for restriction in left and right lateral flexion. However, Dr. Jin found no clinical evidence of ongoing problems or pathology due to the injury. Dr. Jin therefore concluded that the range of motion impairment was the result of preexisting degenerative lumbar disc disease and not the injury in the claim. Dr. Jin classified Mr. Rice as Lumbar Category I with 0% impairment. Regarding the right shoulder, Dr. Jin found no ratable impairment, stating that Mr. Rice had fairly comparable range of motion in both shoulders. She found 4% whole person impairment for the cervical spine under Table 75, and 12% whole person impairment for range of motion abnormalities. Combining the 4% and 12%, Dr. Jin found Mr. Rice to have a 16% whole person impairment for the cervical spine, which adjusts to 8% under Rule 20 for Cervical Category II. Dr. Jin apportioned 4% to the compensable injury and 4% to preexisting degenerative spine disease. She opined that Mr. Rice had preexisting degenerative arthrosis of the right ankle, based upon x-rays, which could be the

3

cause of his decreased range of motion. Dr. Jin concluded that even though the range of motion impairment for the right ankle is 3% of the whole person for dorsiflexion, and 1% for eversion, for a total of 4% of the whole person, it is not causally related to the injury in this claim. She ultimately concluded that Mr. Rice had a 4% whole person impairment for the cervical sprain/strain. She noted that Dr. Mukkamala's rating of 8% for the cervical spine, and apportioning 4% of that to the preexisting impairment, was appropriate. Dr. Jin also agreed with Dr. Mukkamala's opinion regarding the lumbar spine and right shoulder. She disagreed with Dr. Mukkamala's finding of 1% impairment for the right ankle range of motion restriction. She also disagreed with Dr. Guberman's reasoning for not apportioning any of the cervical spine impairment to preexisting impairment.

In a Final Decision dated August 29, 2019, the Office of Judges affirmed the claims administrator's Order of December 21, 2017. In its reasoning, the Office of Judges found that Drs. Mukkamala, Soulsby and Jin all opined that Mr. Rice's preexisting impairment from degenerative conditions should be subtracted and that half of the impairment was appropriately apportioned. Dr. Guberman's recommendation of 12% impairment was deemed to be an outlying rating in the record. The Office of Judges concluded that it is more likely than not that Mr. Rice has 5% whole person impairment for the compensable injury of June 29, 2017. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 19, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges, as affirmed by the Board of Review. The preponderance of the evidence establishes that Mr. Rice suffered from preexisting degenerative conditions of the cervical spine unrelated to the injury in this claim. Drs. Mukkamala, Soulsby, and Jin all acknowledged the preexisting conditions and properly excluded the impairment from the final impairment rating. The Office of Judges found Dr. Guberman's report to be the least reliable report of record, and, as such, was correct in refusing to rely on his report.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: March 19, 2021**

**CONCURRED IN BY:**
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton